[Cite as *State v. Mabry*, 2015-Ohio-4513.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26242 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-3187 |
| | : | |
| TERRELL MABRY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 30th day of October, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JOYCE M. DEITERING, Atty. Reg. No. 0005776, 8801 North Main Street, Suite 200, Dayton, Ohio 45415
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Terrell Mabry, appeals from the decision of the Montgomery County Court of Common Pleas overruling his motion to suppress. Mabry sought to suppress gel capsules containing heroin that a police officer discovered in the pocket of his shorts, as well an incriminating statement he made following the discovery of the heroin. For the reasons outlined below, the judgment of the trial court will be affirmed.

{¶ 2} On December 10, 2013, Mabry was indicted for one count of possessing heroin in an amount less than one gram in violation of R.C. 2925.11(A), a felony of the fifth degree. Mabry pled not guilty to the charge and thereafter filed a motion to suppress. The trial court then held a suppression hearing on March 26, 2014. During the hearing, Officer John Howard of the Dayton Police Department appeared and testified regarding the encounter that led to Mabry's arrest. Howard provided the following testimony.

{¶ 3} At approximately 1:00 p.m. on October 4, 2013, Howard was on duty patrolling the area of East 4th Street and Huffman Avenue in Dayton, Ohio. During this time, Howard observed Mabry and another man, Nicholas Best, jaywalk across the intersection of Columbus Street and East 4th Street. Howard described this location as a high crime area where several robberies have taken place and where he has personally been involved in many drug and homicide investigations.

{¶ 4} After observing the jaywalking violation, Howard approached Mabry and Best with the intent of issuing a citation. As he approached and stopped the two men, Howard recognized Mabry as an individual who was arrested ten days earlier during the execution of a search warrant at a nearby residence located on Garfield Street. According to

Howard, the Garfield Street residence was known to be inhabited by persons involved in drug transactions, aggravated robberies, and a homicide. The day the search warrant was executed, Mabry fled from the residence and was arrested a few streets away. The search of the Garfield Street residence yielded marijuana and two firearms. Although no contraband was found on Mabry's person, an occupant of the Garfield Street residence stated that one of the firearms belonged to Mabry.

{¶ 5} Upon stopping Mabry and Best, Howard explained that the reason for the stop was jaywalking. Because of his prior contact with Mabry, Howard also ordered both Mabry and Best to place their hands on their heads and advised that he was going to conduct a pat-down search for weapons. At some point prior to the pat down, Howard had the men place their hands on his cruiser. During the pat down, Howard could see and feel bulges in Mabry's pants pockets. Once the pat-down search was complete, Howard asked Mabry if he could go into his pockets and remove their contents, to which Mabry responded "yes." Suppression Hearing Trans. (Mar. 26, 2014), p. 16.

{¶ 6} When Howard reached his hand into Mabry's right pants pocket he felt a cellphone, identification card, and a plastic bag containing gel capsules. Howard was able to remove the cellphone and identification card from Mabry's pocket, but when he grabbed ahold of the bag containing the gel capsules, he was unable to remove it from Mabry's pocket. Nevertheless, Howard testified that based on his training and experience as a police officer, which includes eight years of service with the Dayton Police Department where he serves as a patrol officer and assists the Special Investigations Narcotics Bureau GDPM Task Force, he immediately recognized that the gel capsules inside the bag were illegal contraband, specifically heroin.

{¶ 7} Based on his belief that Mabry was in possession of heroin, Howard handcuffed Mabry and asked if he was wearing boxers underneath his pants. In response, Mabry indicated that he was wearing boxers and shorts. Thereafter, Howard partially unbuttoned Mabry's pants and retrieved the plastic bag containing the gel capsules from a pocket of the shorts that Mabry was wearing underneath his pants. As soon as Howard removed the gel capsules, Mabry told Howard that "he just found [the capsules] and that he's high right now." *Id.* at 19. According to Howard, Mabry's statement was not in response to any questioning. Thereafter, Howard issued Mabry a citation for jaywalking.

{¶ 8} Best also testified at the suppression hearing and claimed that he did not recall whether Howard asked for permission to search Mabry's pockets. Mabry, on the other hand, testified that Howard never asked for permission to search and remove items from his pockets.

{¶ 9} As the trier of fact, the trial court credited Howard's testimony and found that Mabry had consented to Howard searching and removing items from his pants pockets. In addition, the trial court determined that the pat-down search for weapons was justified for purposes of officer safety. Accordingly, the trial court overruled Mabry's motion to suppress. Following that decision, Mabry pled no contest to possessing heroin and the trial court sentenced him to community control sanctions not to exceed five years.

{¶ 10} Mabry now appeals from the trial court's decision overruling his motion to suppress, raising one assignment of error for our review. Under his sole assignment of error, Mabry contends the trial court erred in failing to suppress the heroin found on his person and the incriminating statement he made to Howard after the heroin was

discovered.

*Standard of Review*

{¶ 11} "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Prater*, 2012-Ohio-5105, 984 N.E.2d 36, ¶ 7 (2d Dist.), quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.*

*Search of Mabry's Pants Pockets*

{¶ 12} Initially, we note that Mabry concedes that Howard's protective pat-down search for weapons was justified under the Fourth Amendment. However, Mabry contends that the subsequent, warrantless search of his pants pockets was unlawful. We disagree.

{¶ 13} "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable [* * *] subject only to a few specifically established and well-delineated exceptions.' " *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

(Other citations omitted.) One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. *Id.*; *State v. Jefferson*, 2d Dist. Montgomery No. 22511, 2008-Ohio-2888, ¶13.

{¶ 14} "To rely on the consent exception of the warrant requirement, the state must show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988), quoting *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). (Other citation omitted.) "Whether consent to search was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." (Citation omitted.) *State v. George*, 2d Dist. Montgomery No. 25945, 2014-Ohio-4853, ¶ 28.

{¶ 15} The following factors are generally used in Ohio to decide if a defendant's consent to search has been given voluntarily: "(1) whether the defendant's custodial status was voluntary; (2) whether coercive police procedures were used; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his or her right to refuse consent; (5) the defendant's education and intelligence; [and] (6) the defendant's belief that no incriminating evidence will be found." (Citations omitted.) *State v. Black*, 2d Dist. Montgomery No. 23524, 2010-Ohio-2916, ¶ 36-41.

{¶ 16} An individual's knowledge of the right to refuse consent "is not a prerequisite of a voluntary consent." *Schneckloth,* 412 U.S. at 234, 93 S.Ct. 2041, 36 L.Ed.2d 854. In fact, "[t]he [United States Supreme] Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." (Citations omitted.) *United*

*States v. Drayton*, 536 U.S. 194, 206, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). In other words, "while the knowledge of the right to refuse consent is one factor to be considered, it is not the sine qua non of a voluntary consent." *State v. Watts*, 2d Dist. Montgomery No. 21982, 2007-Ohio-2411, ¶ 17, citing *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

{¶ 17} In this case, Officer Howard testified that after he conducted a pat-down search on Mabry, he asked Mabry if he could go into his pants pockets and remove their contents. According to Howard, Mabry consented to his request. While Mabry testified that Howard never requested his consent to search his pockets, the trial court, as the finder of fact, found Howard's testimony credible, and determined that consent was in fact given. Because the record supports the trial court's finding, we will not disturb it on appeal.

{¶ 18} While the trial court did not make any specific findings as to the voluntariness of Mabry's consent, the record indicates that Mabry cooperated with Howard during the encounter and that Mabry was not placed in custody, handcuffs, or the police cruiser at the time he gave his consent. Rather, Mabry consented to the search while standing on a public street. *See United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (consent to search voluntary when given while on a public street and not in the confines of the police station). In addition, there is no evidence that Howard used any coercive police procedures to obtain Mabry's consent. Accordingly, the totality of the circumstances indicate that Mabry's consent was voluntary. Having determined that Mabry's consent was voluntary and thus valid, we find that the search of Mabry's pants pockets was lawful.

*Search and Seizure of Heroin from Mabry's Shorts Pocket*

**{¶ 19}** Mabry also contends that it was unlawful for Officer Howard to unbutton his pants and retrieve the gel capsules from the pocket of his shorts that were underneath his pants.   We again disagree.

**{¶ 20}** Another exception to the general prohibition against warrantless searches and seizures is the plain-feel exception.   *State v. Lawson*, 2d Dist. Clark No. 2005 CA 24, 2006-Ohio-4158, ¶ 9, citing *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).   The plain-feel exception applies when an officer discovers contraband through the sense of touch during an otherwise lawful search.   *Dickerson* at 375.   An officer may lawfully seize the object if he has probable cause to believe that it is contraband.   *Id.*   We have held that "[u]nder the 'plain feel' doctrine, the physical features of the article which are revealed to the officer through his sense of touch must cause the identity of the article, and from that its criminal character, to be immediately apparent to the officer.   However, it need only be probable—that is, more likely than not—that the article possesses that criminal character."   *State v. Dunson*, 2d Dist. Montgomery No. 22219, 2007-Ohio-6681, ¶ 20.

**{¶ 21}** In *State v. Hinton*, 2d Dist. Montgomery No. 25634, 2013-Ohio-3381, a suspect admitted to having a bag of marijuana inside his right front pants pocket following a pat-down search for weapons.   *Id.* at ¶ 11.   As the officer retrieved the bag of marijuana, he felt a hard, irregular-shaped object located in a small coin pocket just above the pocket containing the marijuana.   *Id.* at ¶12.   Based on the officer's testimony that it was immediately apparent to him that the object in the coin pocket was heroin, we held

that the officer's seizure of the heroin was justified under the plain-feel exception to the warrant requirement. *Id*. at ¶ 12 and ¶ 38-40.

**{¶ 22}** Similar to *Hinton*, in this case, Howard testified that as he was removing items from Mabry's pants pockets during the consensual search, he felt a plastic bag containing gel capsules that, through his training and experience, he immediately recognized as heroin. When Howard attempted to remove the heroin capsules from Mabry's pants pocket, he realized they were actually located underneath his pants. Because Howard testified that he immediately recognized the criminal character of the gel capsules upon feeling them, the search of Mabry's shorts underneath his pants and the subsequent seizure of the heroin located inside the pocket of his shorts was lawful under the plain-feel doctrine.

*Statements Following Discovery of Heroin*

**{¶ 23}** Finally, Mabry contends that the incriminating statement he made to Officer Howard about being high should have been suppressed on grounds that the statement was the fruit of an illegal search and seizure and was made without him being advised of his *Miranda* warnings. We note that Mabry withdrew the portion of his motion to suppress involving the incriminating statement at the suppression hearing. *See* Suppression Hearing Trans. (Mar. 26, 2014), p. 4. Regardless, we have already determined that the searches of Mabry's pants and shorts pockets were lawful.

**{¶ 24}** In addition, "*Miranda* warnings are required only for custodial interrogations." *State v. Hogle*, 2d Dist. Greene No. 2014-CA-41, 2015-Ohio-2783, ¶ 20, citing *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). *Miranda* defined

custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Here, the record indicates that Mabry did not make his incriminating statement in response to any question by Howard. Rather, Mabry spontaneously made the statement after Howard removed the gel capsules containing heroin from his shorts pocket.

{¶ 25} For the foregoing reasons, the trial court did not err in overruling Mabry's motion to suppress. Accordingly, Mabry's sole assignment of error is overruled and the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michele D. Phipps
Joyce M. Deitering
Hon. Barbara P. Gorman