[Cite as *State v. Weisgarber*, 2017-Ohio-8764.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO.   27525 |
| | : | |
| v. | : | T.C. NO. 16-CRB-8507 |
| | : | |
| ROBERT D. WEISGARBER | : | (Criminal Appeal from |
| | : |  Municipal Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 1st day of December, 2017.

. . . . . . . . . . .

JOSHUA T. SHAW, Atty. Reg. No. 0087456, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

JENNIFER CUNNINGHAM-MINNICK, Atty. Reg. No. 0088010, Assistant Public Defender, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Pursuant to R.C. 2945.67 and Crim.R. 12(K), the State of Ohio appeals the decision of the Dayton Municipal Court granting Robert D. Weisgarber's motion to suppress evidence. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} Officer Jordan West, a police officer with the Grandview Medical Center Police Department, was the sole witness at the suppression hearing. He testified as follows.

{¶ 3} Officer West has been employed by the Grandview Medical Center Police Department for 3½ years, and several times per shift, he comes into contact with individuals suspected of overdosing on drugs. He indicated that it was a "general policy" for the hospital police to be called for every drug overdose patient. West indicated that there were safety concerns related to the staff's coming into contact with the drugs themselves, needles, and paraphernalia, and to the possibility that patients could self-administer drugs in the hospital. West received training about indicia of a person's being under the influence of drugs, but he had not been trained on Narcan.

{¶ 4} At approximately 10:18 p.m. on December 8, 2016, an emergency room nurse notified West that Weisgarber had been brought by his family to the hospital for a drug overdose. The nurse told West that Weisgarber had received and was responding to Narcan, which can reverse "an opiate overdose." West testified that he was contacted solely due to the fact that Weisgarber had overdosed; there was no report that Weisgarber was being disorderly, threatening, or violent. We infer that the officer was wearing a hospital police uniform, and he testified that he carried a Tazer, handgun, baton, and

handcuffs.

{¶ 5} Officer West went to Weisgarber's hospital room, leaving the door open. West described the room as a square (approximately 12 by 12 or 15 by 15 feet) "individual emergency room" with a door. The room was furnished with a bed with railings, a chair, cabinets, a sink, a nurse's station, and medical equipment mounted on the wall; there was no bathroom or windows. The hospital bed was located in the middle of the room with the head pushed up against the wall. When West entered the room, Weisgarber was lying fully clothed on top of the hospital bed, Weisgarber's parents were standing beside the bed, and a nurse was at the computer; West did not recall if additional medical personnel were present. West did not observe any medical equipment connected to Weisgarber.

{¶ 6} Officer West approached Weisgarber and asked him "the standard question we ask people, if he was in possession of any drugs or weapons." Weisgarber responded, "No." West then asked Weisgarber for consent to search him. Weisgarber said, "Okay." The officer searched Weisgarber while Weisgarber laid on the hospital bed. Upon searching Weisgarber, Officer West located a digital scale (the size of a deck of cards) in a pocket along the leg of Weisgarber's "carpenter-type" pants. West told Weisgarber that he would be presenting the evidence to the Prosecutor's Office and that Weisgarber may be receiving a summons. West did not otherwise communicate with Weisgarber. West testified, "I was trying to be in and out as quickly as possible to not interrupt his care, obviously."

{¶ 7} Officer West testified that Weisgarber appeared "slightly intoxicated," but seemed "pretty coherent." West stated that Weisgarber did not seem to have difficulty

understanding him, and West had no difficulty understanding Weisgarber. When asked if he had asked Weisgarber any questions to see if Weisgarber was understanding him, West responded, "* * * He looked conscious. He was looking at me. He seemed coherent so, no, I did not." West did not know how long prior to the encounter Weisgarber had received Narcan.

{¶ 8} Officer West testified that, during his encounter with Weisgarber, he did not have his hands near any of the weapons he carries (Tazer, handgun, baton), nor did he handcuff or otherwise restrain Weisgarber.

{¶ 9} On December 22, 2016, Weisgarber was charged by complaint with possession of drug paraphernalia, a fourth-degree misdemeanor. Weisgarber subsequently moved to suppress all evidence obtained from him and any statements he made. He asserted that he had been seized and searched on December 8 without probable cause or a reasonable suspicion of criminal activity, "knowledgeable" consent, or exigent circumstances. He further argued that any statements he made were not voluntary and were made without counsel and an explanation of his *Miranda* rights.

{¶ 10} On March 20, 2017, the court held a hearing on the motion, during which Officer West testified. At the conclusion of the hearing, the State argued that Officer West had a consensual encounter with Weisgarber at the hospital and that Weisgarber voluntarily consented to the search of his person. Defense counsel argued that Weisgarber had been "seized" in his hospital room and that the officer had no reasonable, articulable suspicion of criminal activity by Weisgarber. Defense counsel further argued that the State failed to establish that Weisgarber was in a condition to lawfully consent to the search. Counsel noted that the nurse was not called to testify about the medical

treatment Weisgarber received and how he had responded.

{¶ 11} On March 24, 2017, the trial court sustained Weisgarber's motion to suppress. The court first concluded that Officer West did not have a consensual encounter with Weisgarber. The court noted that West approached Weisgarber based on a policy that the police be called for all drug overdose patients, and that West's first statement to Weisgarber was did he (Weisgarber) have any drugs or weapons; West had no knowledge of Weisgarber and the situation other than that Weisgarber was being treated for an overdose. The court thus concluded that Fourth Amendment protections applied, and West lacked a reasonable, articulable suspicion or probable cause to believe that Weisgarber was engaged in criminal activity.

{¶ 12} The trial court further found that Weisgarber did not voluntarily consent to the search. The court noted that the State had the burden of establishing consent, and that a "showing that he merely submitted to an assertion of lawful authority is insufficient to prove consent." The court addressed the circumstances before it, stating: "In the instant case, Officer West entered Defendant's treatment room with no explanation as to why he was there. He showed police authority over the situation by asking about drugs and weapons and a search. There was no communication to Defendant that he was free to refuse consent, or that he would not be detained if he refused[.] [U]nder these conditions his consent was not voluntary."

{¶ 13} The State appeals from the trial court's decision.

## II. Motion to Suppress: Nature of Encounter and Consent

{¶ 14} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate

the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 15} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest. *State v. Millerton*, 2015-Ohio-34, 26 N.E.3d 317, ¶ 20 (2d Dist.).

{¶ 16} Consensual encounters occur when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away. *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 21, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Consensual encounters are not seizures, and the Fourth Amendment guarantees are not implicated in such an encounter. *State v. Taylor*, 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60 (2d Dist.1995), citing *Mendenhall* at 554.

{¶ 17} Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a

reasonable, articulable suspicion that criminal activity may be afoot. *State v. Swift*, 2d Dist. Montgomery No. 27036, 2016-Ohio-8191, ¶ 10. "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or [was] compelled to respond to questions." *Lewis* at ¶ 22, citing *Mendenhall* at 553, and *Terry* at 19. Fourth Amendment protections are implicated in an investigatory detention, *i.e.*, a *Terry* stop.

{¶ 18} In determining whether an individual engaged in a consensual encounter or was subject to an investigatory detention, the focus is on the police officer's conduct, not the subjective state of mind of the person stopped. *State v. Ramey*, 2d Dist. Montgomery No. 26705, 2016-Ohio-607, ¶ 25. As we stated in *State v. Ward*, 2017-Ohio-1391, __ N.E.3d __, ¶ 26 (2d Dist.):

"A consensual encounter remains consensual even if police officers ask questions, ask to see the person's identification, or ask to search the person's belongings, provided 'the police do not convey a message that compliance with their requests is required.' " *[State v.] Westover*, 2014-Ohio-1959, 10 N.E.3d 211, at ¶ 15 [(10th Dist.)], quoting *[Florida v.] Bostick*, [501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)]. In this regard, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Bostick* at 437, 111 S.Ct. 2382, quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975,

100 L.Ed.2d 565 (1988).

{¶ 19} Whether a particular police encounter with a citizen is an investigative stop, as opposed to a consensual encounter, is fact-sensitive. *Id.* at ¶ 26; *State v. Satterwhite*, 2d Dist. Montgomery No. 15357, 1996 WL 156881, *3 (Apr. 5, 1996). "Factors that might indicate a seizure include the threatening presence of several police officers, the display of a weapon, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be required, approaching the person in a nonpublic place, and blocking the citizen's path." *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862, 895 N.E.2d 868, ¶ 13 (2d Dist.), citing *Mendenhall.*

{¶ 20} The trial court concluded that Officer West's encounter was not a consensual encounter. The trial court emphasized that West approached Weisgarber in an individual treatment room in the emergency department solely due to a report of Weisgarber's drug overdose, and the officer initiated the contact by asking whether Weisgarber had "any drugs or weapons." The trial court implicitly found that the location of the encounter and the language used by the officer when he approached conveyed to Weisgarber that a response was required.

{¶ 21} Officer West's testimony indicated that he was the only officer that responded to Weisgarber's room, that he did not have his hands near any of the weapons he carries (Tazer, handgun, baton), and that he did not physically restrain Weisgarber. Nevertheless, Officer West approached Weisgarber in a private room in the emergency department, which was likely not generally accessible to the public at large, and immediately asked Weisgarber if he had drugs or weapons. There is no evidence that the officer introduced himself, asked Weisgarber if he was willing to answer questions, or

engaged in any conversation prior to asking about whether Weisgarber had drugs or weapons. We defer to the trial court's implicit factual finding that West's use of language and demeanor was a display of authority that indicated to Weisgarber that a response was required. Considering the totality of the circumstances, the trial court did not err in concluding that Weisgarber and Officer West were not engaged in a consensual encounter.

{¶ 22} At the conclusion of the suppression hearing, the trial court orally expressed concern with the hospital's policy that the hospital police respond to every drug overdose patient. We agree with the trial court that the mere fact that a person arrives at an emergency room for medical attention for a drug overdose does not, by itself, create a reasonable, articulable suspicion of criminal activity. Here, Officer West testified that he went to Weisgarber's room solely due to his (Weisgarber's) drug overdose. We understand the hospital's concerns for the safety of its patients and staff, but under these circumstances, West had no reasonable, articulable suspicion of criminal activity to justify his investigatory detention of Weisgarber.

{¶ 23} Even if Officer West and Weisgarber were involved in a consensual encounter, we agree with the trial court that the State did not establish that Weisgarber's consent to the search of his person was voluntary.

> Consent is an exception to the warrant requirement that requires the State to "show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." Specifically, " ' "the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere

submission to a claim of lawful authority.' ' "

"A 'clear and positive' standard is not significantly different from the 'clear and convincing' standard of evidence, which is the amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations to be proved. It is an intermediate standard of proof, being more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."

(Citations omitted.) *State v. Ojezua*, 2016-Ohio-2659, 50 N.E.3d 14, ¶ 17-18 (2d Dist.).

**{¶ 24}** This court has considered six factors in determining the voluntariness of consent: (1) whether the defendant's custodial status was voluntary; (2) whether coercive police procedures were used; (3) the extent and level of the defendant's cooperation; (4) the defendant's awareness of his or her right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence would be found. *State v. Terrell*, 2d Dist. Clark No. 2016-CA-32, 2017-Ohio-7097, ¶ 82.

**{¶ 25}** In this case, the record supports the trial court's conclusion that the State did not meet its burden of proof that Weisgarber voluntarily consented to be searched. Weisgarber had been brought to the hospital due to a drug overdose, and he had received Narcan, to which he responded, at the hospital. West did not know how long prior to the encounter Weisgarber had received Narcan. Weisgarber was lying on the hospital bed when West came into Weisgarber's room in the emergency department.

**{¶ 26}** The trial court determined that "Officer West observed that Defendant was intoxicated," but made no finding that Weisgarber was, nevertheless, "pretty coherent," as Officer West also testified. Weisgarber's side of the conversation with the officer consisted of two words: "No" in response to whether he had drugs or weapons, and "Okay" in response to whether the officer could search him. The record supports the trial court's conclusion that the State did not meet its burden of proof that Weisgarber was in a condition to give consent. The trial court also expressly found that the officer displayed "police authority over the situation" and that Weisgarber was not informed of his right to refuse consent. Considering the totality of the circumstances before us, the trial court reasonably found that Weisgarber's response ("okay") to the officer's request to search did not constitute voluntary consent.

**{¶ 27}** The State's assignment of error is overruled.

### III. Conclusion

**{¶ 28}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

TUCKER, J., dissenting:

**{¶ 29}** There are two issues before us – first, whether the encounter between West and Weisgarber violated the Fourth Amendment and second, whether Weisgarber voluntarily consented to the search of his person. I would conclude, based upon the record before us, that the encounter between West and Weisgarber was consensual but, even if not, there was a reasonable, articulable suspicion that Weisgarber was engaged in criminal conduct justifying a brief investigative detention. I also would conclude, again

based upon the record before us, that Weisgarber voluntarily consented to the search of his person.

### The Encounter Was Consensual

{¶ 30} As stated by the majority, encounters between police and citizens fall into three categories – consensual encounters, brief investigative stops, and seizures which are equivalent to an arrest. *State v. Taylor*, 106 Ohio App.3d 741, 667 N.E.2d 60 (2d Dist. 1995). There is no dispute that the encounter between West and Weisgarber was not an arrest or its equivalent. Since a consensual encounter is not a seizure, the Fourth Amendment is not implicated. This is so because placing Fourth Amendment restrictions on police – citizen contacts that are not seizures would not advance "any interest secured by the Fourth Amendment, [and] would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶ 31} The question in this case is what differentiates a consensual encounter from an investigative seizure which, of course, triggers Fourth Amendment concerns. A person is " 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Id.* at 553. This means that "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Id.* at 554. The determination concerning whether a seizure has occurred involves an objective, reasonable person analysis. *Id.*

**{¶ 32}** Factors that are appropriately analyzed when differentiating between a consensual encounter and a seizure include whether the citizen was confronted with the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*, citing *Terry v. Ohio*, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); *Dunaway v. New York*, 442 U.S. 200, 207, and n. 6, 99 S.Ct. 2248, 60 L.Ed. 2d 824 (1979); 3 W. LaFave, Search and Seizure 53-55 (1978). The *Mendenhall* decision concluded that "[i]n the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, *as a matter of law*, amount to a seizure of that person." *Mendenhall* at 555. (Emphasis added.)

**{¶ 33}** I turn, with these thoughts in mind, to the pending case. I start by recognizing that most of the decisions discussing consensual encounters involve on the street contact between a police officer and a citizen, leading to language that consensual encounters occur in a public place and the citizen may walk away. This is noted because the contact between West and Weisgarber occurred in a treatment room within a hospital's emergency room (ER) and Weisgarber, based upon his medical status, was not, in the traditional sense, free to walk away. The majority opinion, this being said, does not suggest, and I cannot discern, any reason why this changes the analysis concerning whether the West – Weisgarber encounter was consensual.

**{¶ 34}** I see no analytical distinction between an ER treating room open to hospital personnel – including hospital police officers – and any other location where a police officer has open, unrestricted access to a person. I also see no logical distinction

between a citizen's ability in an on the street encounter to ignore the police and walk away and Weisgarber's ability to ignore West's questions and terminate any attempted conversation. This conclusion is supported by *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed. 2d 389 (1991), wherein the court stated the rule used to determine whether a seizure has occurred is whether, based upon the totality of circumstances, "the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter." *Bostick* at 439. The decision further states that this "rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus"[,] which is where the police - Bostick encounter occurred. *Id.* at 439-440.

{¶ 35} The analysis, accordingly, is whether West, by the display of a weapon, physical touching, language or tone of voice, or in any other way indicated to Weisgarber that he was not free to ignore West's inquiry and terminate the encounter. The answer to this question, based upon the totality of circumstances surrounding the incident, is that West did not communicate to Weisgarber that he was not free to ignore West's questions and stop the encounter. West did not display a weapon or touch Weisgarber during the less than one minute initial encounter between the two individuals. Further, there is nothing in the record to suggest that West, by language (two questions), tone of voice, or otherwise conveyed to a reasonable person in Weisgarber's circumstance that he was not free to ignore West's questions and stop the encounter. I conclude, as such, that, as a matter of law, the encounter between West and Weisgarber was consensual, and, thus, did not implicate the Fourth Amendment.

{¶ 36} The majority reaches the opposite conclusion by stating that the "trial court

implicitly found that the location of the encounter and the language used by the officer when he approached conveyed to Weisgarber that a response was required."  I have significant concern with the determination that the trial court, given its seizure determination, must have reached factual conclusions consistent with this determination. Further, there is, as discussed, nothing in the record to support the suggested implied conclusions.

{¶ 37} I would also conclude, assuming that the encounter between West and Weisgarber was not consensual, that West, nonetheless, had a reasonable, articulable suspicion that Weisgarber possessed contraband and drug paraphernalia.  West, therefore, could have initiated an investigative stop of Weisgarber without violating the Fourth Amendment.

#### There Was A Reasonable, Articulable Suspicion of Criminal Conduct

{¶ 38} The United States Supreme Court has recognized that a police officer may initiate an investigative stop of a citizen even though the officer does not have probable cause that the citizen has committed or is about to commit a crime.  *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968).  The *Terry* decision recognized that such an investigative stop constitutes a seizure putting the Fourth Amendment into play with the court concluding, after balancing the government's interest in the detection of criminal activity against a citizen's liberty interest, that a brief investigative detention based upon a reasonable, articulable suspicion that a citizen is engaged in criminal conduct does not violate the Fourth Amendment.

{¶ 39} A *Terry* stop must be evaluated based upon the "totality of the surrounding

circumstances." *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), syllabus. The circumstances surrounding the stop must be reviewed "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). A court, given this, "must take into consideration the officer's experience and training and understand how the situation would have been viewed by the officer on the street." *State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, *2 (Jan. 18, 2002).

{¶ 40} West, on the date of his contact with Weisgarber, had been a hospital police officer for three plus years. West testified that during a typical shift he comes into contact with multiple overdose victims. West further testified that he was informed that Weisgarber had responded to the administration of Narcan. This informed West that Weisgarber's overdose likely involved opiates because, as West testified, "[i]f someone responds from Narcan it is normally opiates, that's what [it] has an effect on." Tr. 22. West also testified that the hospital police department initiates contact with overdose patients because "[w]e've had large amounts of narcotics on people that come in as overdose patients. We've had nurses, officers being stuck with needles…" Tr. 33.

{¶ 41} I would conclude, when viewing these circumstances through West's eyes understanding that he has to react to events as they unfold, that West, acting as a reasonable, prudent officer, had a reasonable, articulable suspicion that Weisgarber possessed an illegal opiate (heroin or fentanyl) or that he possessed needles or some other drug paraphernalia. West, as such, and assuming the encounter was not consensual, had a Fourth Amendment justification to initiate a brief investigative encounter with Weisgarber.

{¶ 42} The next question, based upon my conclusion that the contact between West and Weisgarber did not violate the Fourth Amendment, is whether Weisgarber voluntarily consented to the search of his person which resulted in the discovery of the digital scale at issue in this case. I would conclude, as discussed below, that Weisgarber voluntarily consented to the search.

**The Consent to Search Was Voluntary**

{¶ 43} The majority opinion evaluates the consent issue under the assumption that the contact between West and Weisgarber was a consensual encounter. In such a circumstance, the State's burden is to establish by clear and positive evidence that the citizen freely and voluntarily consented to the search. *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988), citing *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). (Other citations omitted.)

{¶ 44} The determination of whether consent is "in fact 'voluntary' or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The State's "burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 549-550.

{¶ 45} Factors that Ohio courts often examine to evaluate the voluntariness of consent include "(1) whether the defendant's custodial status was voluntary; (2) whether coercive police procedures were used; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his or her right to refuse

consent; (5) the defendant's education and intelligence; [and] the defendant's belief that no incriminating evidence will be found." (Citations omitted.) *State v. Black*, 2d Dist. Montgomery No. 23524, 2010-Ohio-2916, ¶¶ 36-41; *State v. Mabry*, 2d Dist. Montgomery No. 26242, 2015-Ohio-4513.

**{¶ 46}** There is case law stating that when a trial court does not specifically address these factors it is appropriate to remand the case to the trial court for such evaluation. *See, e.g., State v. Limoli*, 10th Dist. Franklin No. 11AP-924, 2012-Ohio-4502. We, in the absence of evaluation of the indicated factors, have concluded, based upon the record, that a defendant's consent to a search was a free and voluntary act. *State v. Mabry*, *supra*; *State v. Ward*, 2017-Ohio-1391, __N.E.3d__ (2d Dist.) (Donovan, J., dissenting.)

**{¶ 47}** In *State v. Ward*, for example, we stated, in a situation where the trial court did not make specific findings regarding the discussed factors, "there is no reason here to remand, as the record indicates there were no coercive police procedures nor was Ward placed in handcuffs or in custody in any way. As a result, Ward's consent to the search was voluntary." *State v. Ward*, ¶ 45.

**{¶ 48}** Similarly, in *State v. Mabry* we concluded, again in the absence of specific trial court findings, that Mabry was cooperative, that he was not placed in custody, handcuffs were not used, he was not placed into a cruiser, the consent occurred on a public street, and no coercive police tactics were used. We, upon this record, concluded that "the totality of the circumstances indicate that Mabry's consent was voluntary. *State v. Mabry*, ¶ 18.

**{¶ 49}** I would conclude, even though the trial court did not make findings regarding

the indicated factors, that Weisgarber's consent, under the totality of circumstances, was a free and voluntary act. I would reach this conclusion because Weisgarber was not in custody, he was cooperative during the less than one minute encounter, and no coercive police tactics were employed.

{¶ 50} The majority opinion, in reaching the opposite conclusion, states that "[t]he record supports the trial court's conclusion that the State did not meet its burden of proof that Weisgarber was in a condition to give consent." The trial court did not make such a finding, and its consent decision is not based upon Weisgarber's inability to give consent. Further, West's unrebutted testimony is that Weisgarber's mental status did not prevent a voluntary consent to the requested search.

{¶ 51} The majority opinion also references the trial court's conclusions that West asserted police authority and that Weisgarber was not informed that he did not have to give consent. The majority opinion, from this, concludes "[c]onsidering the totality of the circumstances before us, the trial court reasonably found that Weisgarber's response ('okay') to the officer's request to search did not constitute voluntary consent." Any time an officer interacts with a citizen and begins to ask questions there is a display of authority, but such a display, without more, does not constitute a coercive police tactic that can render a person's consent involuntary. Our decision in *State v. Wilt*, 2d Dist. Montgomery No. 19108, 2002 WL 272593 (Feb. 22, 2002), though focused upon whether an encounter was consensual, is instructive on this issue. We stated that the "rule of *Mendenhall* charges citizens with knowledge of their Fourth Amendment rights, leaving it up to a citizen whether to invoke the right and walk from an officer who asks to speak with him or her. To foreclose that right, more than a mere encounter with a uniformed officer

is required." *State v. Wilt*, *4. Similarly, it takes something more than a uniformed officer asking questions to create coercive police conduct that will render a consent to search involuntary.

{¶ 52} Finally, an officer is not obligated to inform a person of his right to refuse consent, and a person's knowledge of his right to decline a requested search, though a factor to be considered, is not sufficient, without more, to render a person's consent less than voluntary.

{¶ 53} I would conclude, on this record, that the encounter between West and Weisgarber was consensual and that Weisgarber freely and voluntarily consented to the search of his person.   I, therefore, dissent.

. . . . . . . . . . . .

Copies mailed to:

Joshua T. Shaw
Jennifer Cunningham-Minnick
Hon. Deirdre E. Logan

| | |
|---|---|
| Case Name: | *State of Ohio v. Robert D. Weisgarber* |
| Case No.: | Montgomery App. No. 27525; T.C. No. 16-CRB-8507 |
| Panel: | Donovan, Froelich, Tucker |
| Author: | Jeffrey E. Froelich |
| Summary: | State's appeal from the granting of defendant's motion to suppress. The trial court did not err in concluding that the officer initiated an investigatory detention, rather than a consensual encounter, at the hospital, and that defendant did not voluntarily consent to be searched.   Judgment affirmed. (Tucker, J., dissenting.) |