[Cite as *State v. Pooler*, 2021-Ohio-1432.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee/Cross-Appellant | : | Appellate Case No. 28661 |
| | : | |
| | : | Trial Court Case No. 2018-CR-3325 |
| v. | : | |
| | : | (Criminal Appeal from |
| NE'AARICK L. POOLER | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant/Cross-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of April, 2021.

. . . . . . . . . .

MATHIAS H. HECK, JR. by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee/Cross-Appellant

ANDREW C. SCHLUETER, Atty. Reg. No. 0086701, P.O. Box 96, Xenia, Ohio 45385
      Attorney for Defendant-Appellee/Cross-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Ne'Aarick L. Pooler appeals from his conviction following a no-contest plea to improper handling of a firearm in a motor vehicle, a fourth-degree felony. The State has filed a cross-appeal challenging Pooler's sentence.

{¶ 2} In his sole assignment of error, Pooler contends that the trial court erred in overruling his motion to suppress the firearm at issue. He asserts that he did not voluntarily consent to a search that resulted in its discovery. He also argues that incriminating statements should have been suppressed as fruit of the poisonous tree. In its cross-appeal, the State claims Pooler's sentence to "time served" was contrary to law.

{¶ 3} The only witness at Pooler's suppression hearing was Drew Olinger, a Moraine police officer. Olinger testified that he observed Pooler driving a vehicle with no front license plate and an expired registration sticker on the back.[1] Olinger checked the rear plate and found that it was registered to a different vehicle. For these reasons, the officer made a traffic stop. Pooler, the sole occupant of the vehicle, advised Olinger that he had a state identification card but no driver's license. Olinger entered Pooler's information into a law-enforcement database and discovered that Pooler recently had been arrested for having a handgun in his vehicle. The officer also noticed loose ammunition scattered throughout Pooler's vehicle. Olinger then asked whether Pooler had a weapon in the vehicle, and Pooler responded negatively. At that point, Olinger requested permission to search the vehicle. According to Olinger, Pooler responded "go ahead and check" and voluntarily stepped out of the vehicle.

{¶ 4} A second officer stood near Pooler while Olinger searched and found a

---

[1] At the time of the stop, Ohio still required a front license plate.

loaded handgun in an interior compartment. Olinger was roughly 10 feet from Pooler during the search. Olinger testified that he was talking to Pooler about football while he searched and that Pooler never revoked the consent to search. Upon discovering the handgun, Olinger directed the second officer to handcuff Pooler. At that point, Pooler spontaneously remarked that he had forgotten about the gun.

{¶ 5} After waiving his *Miranda* rights at the police station, Pooler stated that he had purchased the handgun from a private seller a few months earlier. He reiterated that he had forgotten about it being in his vehicle. The handgun was tested and found to be operable.

{¶ 6} Based on the evidence presented, the trial court overruled Pooler's suppression motion. He pled no-contest to one count of improper handling of a firearm in a motor vehicle. The trial court accepted the plea and found Pooler guilty. During the sentencing hearing, the trial court indicated that it would sentence him to "time served." In its December 27, 2019 final judgment entry, the trial court likewise ordered "that the Defendant be sentenced to TIME SERVED."

{¶ 7} On appeal, Pooler concedes that the traffic stop was lawful. He challenges only the trial court's finding that he "freely consented" to the search of his vehicle. Pooler cites a six-factor test frequently used to determine the voluntariness of consent to search. Those factors include: "(1) whether the defendant's custodial status was voluntary; (2) whether coercive police procedures were used; (3) the extent and level of the defendant's cooperation; (4) the defendant's awareness of his or her right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence would be found." *State v. Weisgarber*, 2017-Ohio-8764, 88 N.E.3d 1037, ¶ 24

(2d Dist.).

{¶ 8} In overruling Pooler's suppression motion, the trial court cited the foregoing factors and reasoned as follows:

Defendant, on request of Ofc. Olinger, freely consented to a search of the SUV. The circumstances of the seizure and subsequent search are not of the type that bring into question the voluntariness of that consent.

1. Earlier in the encounter, Defendant volunteered information that he did not possess a valid license.

2. When asked if the officers could search, Defendant got out of his car and said "go ahead and check."

3. While Ofc. Olinger was searching the car, the Defendant was five to ten feet away and maintaining pleasant conversation about football.

4. At no point did Defendant revoke his consent or question his consent.

5. Defendant forgot the gun was in the car, indicating that he did not believe any incriminating evidence would be found.

6. Defendant has a high school diploma.

Simply put, Defendant freely consented to the search and never revoked that consent despite his clear ability to have done so. * * *

(May 6, 2019 Order at 5.)

{¶ 9} Pooler concedes that the factors the trial court cited tend to support a finding of voluntary consent. He argues, however, that the trial court failed to give sufficient

weight to other factors tending to show coerced consent. First, Pooler cites the fact that his encounter with police was not consensual. It was the result of a traffic stop. Second, he notes the presence of two officers. Third, he cites the absence of evidence demonstrating that he knew he could limit or revoke his consent. Fourth, he notes the absence of written consent to search or a recording of the incident.

{¶ 10} Upon review, we see no error in the trial court's determination that Pooler's consent was voluntary. It is true that Pooler's interaction with police was the result of a misdemeanor traffic stop, not a consensual encounter. It is equally true, however, that the record is devoid of evidence suggesting that Pooler was under duress or that police engaged in any coercive conduct. Although two officers were present, we see nothing to suggest that they threatened him, intimidated him, or caused him to submit to any show of authority. By his own free will, Pooler appears to have been fully cooperative before and during the search. He voluntarily stepped out of his car and engaged Olinger in a casual conversation about football during the search. With regard to Pooler's awareness of his right to revoke or limit consent, the record contains no evidence one way or the other. Pooler did not testify at the suppression hearing, but he did possess a high-school education and previously had been charged with improper handling of a firearm in a motor vehicle, suggesting that he had some awareness of the criminal process and some intelligence. As for the absence of written consent or a recording, consent may be either in writing or oral. *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 24 (2d Dist.). The fact that Pooler's consent was oral does not make it any less valid or imply coercion. Finally, the absence of a recording, which Olinger explained simply did not exist, is not indicative of coercion.

{¶ 11} In short, the record fully supports a finding that Pooler "freely consented" to the vehicle search. That being so, we see no error in the trial court's refusal to suppress the handgun. Because the traffic stop and search were lawful, no basis existed to suppress Pooler's post-arrest statements as "fruit of the poisonous tree." Accordingly, his assignment of error is overruled.

{¶ 12} In its cross-appeal, the State contends that the trial court erred at the sentencing hearing and in its judgment entry when it sentenced Pooler to "time served." The State argues that this sentence is subject to review and correction under R.C. 2953.08(G)(2) because it is contrary to law. For his part, Pooler concedes that his sentence is contrary to law because the trial court did not impose a community control sanction or a prison sentence. In his reply brief, Pooler states:

> R.C. 2929.13(B) specifies lawful sanctions for the commission of a fourth-degree felony. These sanctions include "community control sanctions" or one of the prison terms specified in R.C. 2929.14 at the discretion of the trial court. A " '[c]ommunity control sanction' means a sanction that is not a prison term and that is described in section 2929.15, 2929.16, 2929.17, or 2929.18 of the Revised Code." R.C. 2929.01(E). The trial court's sanction of "time served" is not described in the applicable sections of the Revised Code. The termination entry neither imposes community control sanctions nor a prison term as a sanction in Appellant's case.

> Accordingly, the trial court's disposition of "time served" in Appellant's case is contrary to law.

**{¶ 13}** Upon review, we agree that sentencing Pooler to "time served" was contrary to law. For Pooler's fourth-degree felony, the trial court had the option of imposing community control sanctions with or without a jail term. Alternatively, the trial court had the option of imposing a prison term because Pooler's offense involved a firearm. *State v. McGinnis*, 2d Dist. Greene No. 2018-CA-35, 2019-Ohio-3803, ¶ 14. Pooler's sentence to "time served" did not constitute a prison sentence. Nor did it correctly constitute a community control sanction. The trial court did not reference community control or inform Pooler of the penalties for a community control violation. We recognize, however, that the trial court conceivably could have imposed community control sanctions that included a jail term equal to the time Pooler already had served.[2]  Accordingly, although we conclude that Pooler's sentence to "time served" was contrary to law, we also believe the court constructively imposed a single community control sanction of a jail sentence equal to the amount of time the defendant had already served. We see no benefit in remand.

**{¶ 14}** The sentence of "time served" is modified to reflect a sentence of community control sanctions with the singular requirement of a jail sentence equal to the amount of the time served in pretrial detention and with credit for that time served. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

---

[2] Previously, there was a requirement that community control sanctions be in place for a minimum of one year. R.C. 2929.13(B)(1)(a). 2018 Senate Bill 66 removed the one-year requirement effective 10-29-18. And, if a term of community control is specified, a trial court should only shorten or end community control if "for a significant period of time, [a defendant] fulfills the conditions of a sanction in an exemplary manner" R.C. 2929.15(C). See *State v. Castillo,* 2d Dist. Montgomery App. No. 24022, 2011-Ohio-1821.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Andrew C. Schlueter
Hon. Steven K. Dankof