[Cite as *State v. Williams-Stupp*, 2025-Ohio-1815.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30304 |
| | : | |
| v. | : | Trial Court Case No. 2024 CR 01426 |
| | : | |
| TION WILLIAMS-STUPP | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 21, 2025

. . . . . . . . . . .

ARVIN S. MILLER, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Tion Williams-Stupp appeals from his convictions in the Montgomery County Court of Common Pleas following his no contest pleas to one count of carrying a concealed weapon and one count of violating a protection order.   He argues

that the trial court erred in overruling his motion to suppress and abused its discretion by reopening the suppression hearing to call an additional witness. For the following reasons, the judgment of the trial court will be affirmed.

I.     Facts and Course of Proceedings

{¶ 2} On May 21, 2024, a Montgomery County grand jury indicted Williams-Stupp on one count of carrying a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12(A)(2), and one count of violating a protection order, a first-degree misdemeanor in violation of R.C. 2919.27(A)(3). These charges resulted from a May 8, 2024 investigatory stop of Williams-Stupp after a police detective observed him jaywalking. Williams-Stupp pleaded not guilty to the charges in the indictment.

{¶ 3} On June 4, 2024, Williams-Stupp filed a motion to suppress any evidence "obtained from the unjustified and illegal investigation and arrest." According to the motion, Williams-Stupp did not jaywalk. Therefore, Williams-Stupp argued that the police did not have a reasonable suspicion of articulable facts to stop him and any evidence and statements that were obtained following the stop were inadmissible.

{¶ 4} A hearing on the motion to suppress was held on July 18, 2024. Detective Dustin Phillips of the Dayton Police Department testified at the hearing. He worked for 17 years for the Dayton Police Department, most recently within the Special Investigations Bureau. On May 8, 2024, he was surveilling the DeSoto Bass area, which the police considered a high crime area. Detective Phillips witnessed Williams-Stupp cross a street in such a way that Detective Phillips believed he had jaywalked in violation

of the Dayton City Ordinances. In particular, Detective Phillips explained, "When I first observed him, again he was crossing -- it would have been from south to north, across Bancroft Street, mid-block between Frizell and North -- South Euclid. Again, he could have gone either direction approximately half a block to hit the intersection. However, he just walked directly across the street mid-block." Tr. 10-11.

{¶ 5} Detective Phillips also saw a gun magazine sticking out of Williams-Stupp's clothes and saw him clutching his right pocket and looking back over both shoulders, which Detective Phillips considered suspicious behavior. Detective Phillips subsequently observed that Williams-Stupp had possession of a gun. Detective Phillips communicated this information by radio to Police Officer Vincent Carter and Detective Tyler Orndorff. These officers were sharing the same police channel. Detective Phillips then lost sight of Williams-Stupp for several minutes. During the time Detective Phillips lost sight of Williams-Stupp, Detective Orndorff radioed that he witnessed Williams-Stupp jaywalking a second time. According to Detective Phillips, Detective Orndorff informed him that he saw Williams-Stupp "exit Attucks Place, walk down the street, the middle of the street, and then cross over the intersection of Bancroft." *Id.* at 25. Officer Carter then conducted a stop of Williams-Stupp.

{¶ 6} Once Williams-Stupp was stopped by Officer Carter, he began raising his voice and getting angry. Detective Phillips arrived and immediately grabbed the gun from Williams-Stupp's pocket. Williams-Stupp was placed in handcuffs due to his aggressive behavior. When questioned, Williams-Stupp provided what the police officers suspected was false information as to his identity. Therefore, Williams-Stupp

was transported to the jail for fingerprinting to confirm his identity. Before being fingerprinted, Williams-Stupp revealed his true identity, which revealed an active warrant.

{¶ 7} Following the suppression hearing, Williams-Stupp filed a memorandum in support of his motion to suppress. The State filed a memorandum in opposition to the motion to suppress. On October 1, 2024, the trial court issued an order requiring additional testimony relating to the motion to suppress. The court stated, in part: "In an effort to render a proper decision, the Court needs to hear from an additional witness, Detective [Tyler] Orndorff. It is the Court's duty to get to the truth of a case and subsequently, it is the Court's opinion Detective Orndorff's testimony will elicit information necessary for the Court to render an accurate decision."

{¶ 8} On October 10, 2024, the trial court reopened the suppression hearing and called Detective Orndorff to testify regarding the events of May 8, 2024. According to the trial court, Williams-Stupp's memorandum in support of his motion to suppress convinced the trial court to provide Williams-Stupp with an opportunity to cross-examine Detective Orndorff about whether he had alerted the other two officers at the scene that he had witnessed Williams-Stupp jaywalking. Williams-Stupp objected to reopening the suppression hearing.

{¶ 9} At the time of the October 10, 2024 hearing, Detective Orndorff had worked for the Dayton Police Department for approximately 12 years. He had worked within the Narcotics Bureau since April 2019. On May 8, 2024, Detective Orndorff was surveilling the Miami Chapel area with Detective Jeremy Stewart, Detective Phillips, and Officer Carter. A few moments before Detective Orndorff observed Williams-Stupp walking,

Detective Phillips radioed him that he had witnessed Williams-Stupp walking with a firearm in his pocket. Detective Orndorff then witnessed Williams-Stupp do the following:

He'd exited off of Attucks Place walking down the thoroughfare of that parking area, and then from there, he traveled directly to the -- I would call it the eastern curb, and then walked down the middle - - I would call it the middle of the street, in the street, roadway, and then, basically approached and made his approach onto the sidewalk of that eastern sidewalk of Danner and Bancroft. So I call that the southeast corner of Danner and Bancroft.

Tr. 49. Detective Orndorff radioed this information to the other officers sharing the police channel. Officer Carter then conducted a stop of Williams-Stupp.

{¶ 10} When asked questions to clarify where Williams-Stupp had been walking, Detective Orndorff explained that Williams-Stupp "didn't go on the road that far on the Danner part, but stayed along that curb right there. . . . He walked along the eastern curb." *Id.* at 51. Detective Orndorff confirmed that Williams-Stupp walked on the street and not on the sidewalk the entire way until he reached the corner of the street.

{¶ 11} On cross-examination, Detective Orndorff conceded that he had not created a report on May 8, 2024, and that he had reviewed Detective Phillips's report to help refresh his recollection before the suppression hearing. However, he stated that he had independent memories of the events of May 8, 2024.

{¶ 12} On October 17, 2024, the trial court overruled the motion to suppress. The same day, the trial court held a change of plea hearing at which Williams-Stupp changed

his pleas to no contest to the two charges in the indictment. After a plea colloquy, the trial court accepted the two no contest pleas and found Williams-Stupp guilty as charged in the indictment. The court then sentenced Williams-Stupp to five years of community control sanctions. Williams-Stupp filed a timely notice of appeal.

II. The Trial Court Did Not Abuse Its Discretion by Reopening the Suppression Hearing and Calling an Additional Witness

{¶ 13} Williams-Stupp's first assignment of error is partially based on arguments raised in his second assignment of error. Therefore, we will first resolve the second assignment of error, which concerns the trial court's decision to reopen the suppression hearing and call an additional witness to testify about the events of May 8, 2024. Williams-Stupp's second assignment of error states:

> THE TRIAL COURT VIOLATED THE DEFENDANT'S RIGHT TO A FAIR AND IMPARTIAL DISPOSITION OF HIS MOTION TO SUPPRESS EVIDENCE, BY THE JUDGE FAILING TO REMAIN DETACHED AND NEUTRAL, WHEN RATHER THAN RULING ON THE MOTION BASED UPON THE EVIDENCE PRESENTED BY THE PROSECUTOR, AND AFTER BOTH PARTIES BRIEFED THE ISSUE, AND ABSENT ANY REQUEST BY THE PROSECUTOR, SHE DECIDED TO HELP THE PROSECUTOR'S CASE BY ORDERING AN ADDITIONAL WITNESS TO TESTIFY.

{¶ 14} On July 18, 2024, the trial court held a hearing on the motion to suppress. During this hearing, Detective Phillips testified about why an investigatory stop was conducted. The stop resulted from radio interactions between Detective Phillips, Detective Orndorff, and Officer Carter during which the respective Detectives alerted each other and Officer Carter to their observations of Williams-Stupp. During the suppression hearing, Detective Phillips explained that Detective Orndorff had shared the fact that he witnessed Williams-Stupp jaywalking. The trial court allowed this testimony over defense counsel's hearsay objections. At the end of the hearing, defense counsel asked for an opportunity to file a brief before the trial court made its ruling on the motion to suppress. The trial court granted this request.

{¶ 15} On August 2, 2024, Williams-Stupp filed a memorandum in support of his motion to suppress. In this memorandum, Williams-Stupp argued that "Detective Phillips testified as to what Detective Orndorff allegedly told him. Those hearsay words are the sole justification for the stop. Cross examination of Phillips was worthless, he both did not observe the event nor does he understand the jaywalking ordinance." Memorandum (Aug. 2, 2024), p. 3. Despite acknowledging that the rules of evidence are largely inapplicable at suppression hearings, Williams-Stupp argued that the admission of Detective Phillips's testimony about what Detective Orndorff stated he had observed was crucial to the determination of the motion to suppress, and there was no objective support for Orndorff's hearsay statement. Therefore, Williams-Stupp contended that the admission of hearsay at the suppression hearing was "reversable error." *Id.* at 4-5. The State filed a memorandum in opposition to Williams-Stupp's motion to suppress.

{¶ 16} On October 1, 2024, the trial court issued an order requiring additional testimony relating to the motion to suppress. The court stated, in part: "In an effort to render a proper decision, the Court needs to hear from an additional witness, Detective [Tyler] Orndorff. It is the Court's duty to get to the truth of a case and subsequently, it is the Court's opinion Detective Orndorff's testimony will elicit information necessary for the Court to render an accurate decision."

{¶ 17} On October 10, 2024, Detective Orndorff testified relating to the events of May 8, 2024. Both parties were given an opportunity to question Detective Orndorff. Before the questioning began, Williams-Stupp objected to the trial court's decision to reopen the hearing. The trial court then gave the following explanation as to why it had decided to call Detective Orndorff as a witness:

> I will tell you, [defense counsel], the Court made prior rulings that Det. Phillips could testify to the hearsay information that he had, hearsay is admissible in a motion to suppress, and the collective knowledge doctrine applies in this case, as well, which the Court was analyzing all of those things.
>
> In reading, quite frankly, your brief, you convinced me that you should have the opportunity to cross-examine and undermine that testimony because it is critical to the stop in this case, which is why I'm bringing him back in. To give you that opportunity.
>
> . . .
>
> Your [brief] is the one that convinced me to allow you to be able to

cross-examine him and basically reverse my prior ruling that I made at the time of the hearing because the Court wants to get to the bottom of it. So I don't want to say, at this point, the Court has not made a decision, but I certainly had not made a decision that the State hadn't sustained its burden either. However, you now will have the opportunity to undermine that through your cross-examination, and I think that that is important for the Court to hear all of the evidence and allow you the opportunity to cross-examine that witness to see if that changes what the Court has heard so far. So that's why the Court ordered Det. Orndorff to come in. It was on the Court's own motion so that I can feel comfortable that I am making a proper ruling on whether or not the police acted in accordance with the law in this particular case.

Tr. 42-43.

{¶ 18} Williams-Stupp contends that the trial court lost any semblance of impartiality when it injected itself into the case by helping the State meet its burden of proof at the suppression hearing by ordering an additional hearing and additional testimony. Appellant's Brief, p. 9. According to Williams-Stupp, "[t]he fact that the court was having difficulty writing a decision based upon what the State presented at the hearing indicates that the State failed to carry its burden of proof." *Id.* at 10. We disagree.

{¶ 19} Evid.R. 614(A) provides: "The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine

witnesses thus called." This is done in the court's sound discretion, and as " 'long as the court maintains its impartiality and does not assume the role of an advocate, such practice does not prejudice the rights of the defendant to a fair and impartial trial.' " *State v. Adams*, 62 Ohio St.2d 151, 157, fn. 10 (1980), quoting *State v. Weind*, 50 Ohio St.2d 224, 235-236 (1977). Evid.R. 614(A) " 'simply codifies a judge's well-established common law authority to call witnesses.' " *State v. Pettiford*, 2019-Ohio-892, ¶ 86 (2d Dist.), quoting *United States Marshals Serv. v. Means*, 741 F.2d 1053, 1058 (8th Cir. 1984) (discussing Fed.R.Evid. 614(a), which is identical to Ohio's rule). Further, "[t]rial courts routinely exercise their right to ask questions as provided in Evid.R. 614, particularly when the court sits as the trier of fact." *In re Adoption of A.R.Z.*, 2022-Ohio-4810, ¶ 26 (4th Dist.).

{¶ 20} Based on our review of the record, we do not agree with Williams-Stupp that the trial court showed any partiality in its decision to call Detective Orndorff as a witness. Rather, the court explained that it believed allowing defense counsel to cross-examine Detective Orndorff was vital to obtaining the truth about the events of May 8, 2024, which were at issue in the motion to suppress. The court allowed the parties to take the lead in questioning Detective Orndorff and did not assume the role of an advocate for either party. Indeed, the trial court asked no questions of Detective Orndorff. While Williams-Stupp believes the motion to suppress should have been granted based on the evidence presented on the first day of the suppression hearing, this belief does not establish that the trial court reopened the suppression hearing and called Detective Orndorff as a witness in order to assist the State in proving its case or to act as an

advocate for the State. Rather, the trial court exercised its discretion to hear additional testimony when it reasonably determined that Williams-Stupp deserved an opportunity to cross-examine Detective Orndorff about the information he had provided to Detective Phillips and Officer Carter. *See State v. Knisley*, 2010-Ohio-116, ¶ 48-50 (2d Dist.) (holding the trial court did not abuse its discretion in calling an additional witness at a suppression hearing where the court wanted to give the defendant the benefit of any testimony that the witness could add for "more certainty" and "in the [d]efendant's interest"). Therefore, we cannot conclude on this record that the trial court abused its discretion in calling an additional witness to testify at the suppression hearing.

**{¶ 21}** The second assignment of error is overruled.

### III. The Trial Court Did Not Err in Overruling the Motion to Suppress

**{¶ 22}** Williams-Stupp's first assignment of error states:

THE TRIAL COURT ERRED BY NOT SUPPRESSING THE EVIDENCE THAT WAS THE PRODUCT OF THE POLICE VIOLATING THE DEFENDANT'S CONSTITUTIONAL PROTECTED RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE.

**{¶ 23}** "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Prater*, 2012-Ohio-5105, ¶ 7 (2d Dist.), quoting

*State v. Retherford*, 93 Ohio App.3d 586, 592 (2d Dist. 1994). "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.*, quoting *Retherford* at 592.

{¶ 24} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), citing *Katz v. United States*, 389 U.S. 347, 360 (1967). Whether a stop is reasonable under the Fourth Amendment depends upon the particular facts and circumstances, viewed objectively by examining the totality of the circumstances. *State v. Leak*, 2016-Ohio-154, ¶ 14, citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

{¶ 25} "The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest." *State v. Weisgarber*, 2017-Ohio-8764, ¶ 15 (2d Dist.), citing *State v. Millerton*, 2015-Ohio-34, ¶ 20 (2d Dist.). As to investigatory stops, police officers may briefly stop and/or temporarily detain individuals to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a traffic violation. *State v. Mays*, 2008-Ohio-4539, ¶ 7-8. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those

circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991), citing *United States v. Hall*, 525 F.2d 857, 859 (D.C. 1976), and *State v. Freeman*, 64 Ohio St.2d 291, 295 (1980).

{¶ 26} In ruling on a motion to suppress, a court may consider the collective knowledge of police officers involved in a common investigation. *State v. Henderson*, 51 Ohio St.3d 54, 57 (1990). Police may rely on information broadcast over a police radio for reasonable suspicion to make an investigatory stop. *See State v. Fultz*, 13 Ohio St.2d 79 (1968), paragraph two of the syllabus (holding that an officer has probable cause to make an arrest where he received information over the police radio that gave him reasonable grounds to believe a felony had been committed).

{¶ 27} Detectives Phillips and Orndorff testified about the fact that they were working in tandem, along with Detective Stewart and Officer Carter, to surveil a high crime area. As part of their surveillance efforts, they exchanged communications on the same police radio channel. In short, the officers had a reliable channel of communication set up to exchange observations with each other in real time.

{¶ 28} Williams-Stupp contends that the police officers lacked probable cause to stop and detain him for jaywalking. According to Williams-Stupp, "[n]o reasonable officer in Detective Phillips's position would have concluded that Mr. Williams-Stupp was jaywalking." Appellant's Brief, p. 5. Williams-Stupp cites our prior decision in *State v. Lemanski-Jester*, 1999 WL 1034449 (2d Dist. Nov. 12, 1999), as support for his argument that what Detective Phillips observed was not jaywalking. Further, Williams-Stupp

argues that "the hearsay statements from Detective Orndorff, by themselves, were insufficient to support probable cause that Mr. Williams-Stupp jaywalked. The hearsay statements of Detective Orndorff testified to by Detective Phillips should have been excluded as lacking in indicia of reliability due to them being more in the nature of conclusions reached by Detective Orndorff and not facts to support those conclusions." Appellant's Brief, p. 7. Finally, Williams-Stupp contends that the fact that the trial court sought the additional testimony of Detective Orndorff proved that there was insufficient evidence presented by Detective Phillips to support the jaywalking defense. According to Williams-Stupp, "[t]he only reason to seek additional evidence was because the hearsay evidence was lacking in specifics to find that Detective Orndorff observed a jaywalking violation." *Id.*

{¶ 29} Given our resolution of the second assignment of error, we need not address Williams-Stupp's arguments regarding whether the trial court should have precluded Detective Phillips from testifying about what Detective Orndorff told him or whether Detective Phillips's testimony, by itself, was sufficient to establish reasonable, articulable suspicion justifying the investigatory stop. Rather, we will consider the testimony of both detectives in resolving the first assignment of error. Based on our review of the record, we conclude that the trial court did not err in overruling Williams-Stupp's motion to suppress.

{¶ 30} Detectives Phillips and Orndorff testified that Williams-Stupp was stopped on May 8, 2024, due to his jaywalking in violation of Section 75.02(A) of the Dayton City Ordinances. That section provides: "Where usable walks or paths parallel a street or

highway, pedestrians shall not travel in, along, or on the vehicular traveled portion of such street or highway, except to cross the roadway in the manner provided by law." We agree with Williams-Stupp that what Detective Phillips observed was not jaywalking, because there was no evidence that there were traffic control devices on the road that Williams-Stupp crossed or that he did not yield the right of way to any traffic on that road. *See Lemanski-Jester*, 1999 WL 1034449 (2d Dist.). However, what Detective Orndorff observed qualified as jaywalking in violation of Section 75.02(A) of the Dayton City Ordinances.

**{¶ 31}** Detective Orndorff testified that he observed Williams-Stupp walking on the street and not on the sidewalk the entire way until he reached the corner of the street. The exhibits introduced at the suppression hearing showed that there were sidewalks available running parallel to the street on which Williams-Stupp walked. Therefore, Detective Orndorff had a reasonable, articulable suspicion that Williams-Stupp had committed a violation of Section 75.02(A) of the Dayton City Ordinances.

**{¶ 32}** The trial court found both Detective Phillips and Detective Orndorff to be credible witnesses. In ruling on a motion to suppress, the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *Retherford*, 93 Ohio App.3d at 592 (2d Dist.). The observations of Detective Orndorff, communicated to the other officers in real time, provided reasonable, articulable suspicion that Williams-Stupp had committed a violation of Section 75.02(A) of the Dayton City Ordinances, which supported the investigatory stop of Williams-Stupp. Therefore, we cannot conclude that the trial court erred in overruling the motion to suppress.

**{¶ 33}** The first assignment of error is overruled.


IV.     Conclusion

**{¶ 34}** Having overruled both assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .


EPLEY, P.J. and HANSEMAN, J., concur.